# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


GERALDINE ROBINSON,        )
                                 )
           Plaintiff,      )
                                 )
    v.                        )       1:12CV301
                                 )
JOE W. BOWSER, in his      )
official and individual   )
capacity; DURHAM COUNTY    )
BOARD OF COUNTY COMMISSIONERS; )
DURHAM COUNTY DEPARTMENT   )
OF SOCIAL SERVICES BOARD;  )
STAN HOLT, in his official  )
capacity; and GAIL PERRY,   )
in her official capacity,   )
                                 )
           Defendants.     )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge for a recommended ruling on: (1) Defendants' Motion for Summary Judgment (filed by Defendants Joe W. Bowser, in his official capacity as a member of the Durham County Board of County Commissioners, and Durham County Board of County Commissioners) (Docket Entry 74); (2) the Motion for Summary Judgment of Defendant Bowser (in his individual capacity) (Docket Entry 76); and (3) the Motion for Summary Judgment by Defendants Durham County Department of Social Services Board ("DSS Board"), Defendant Bowser, in his official capacity as a DSS Board Member, Stan Holt, in his official capacity, and Gail Perry, in her official capacity (Docket Entry 82). (See Docket Entry dated July 12, 2013; see also Docket Entry dated Mar. 30, 2012 (assigning case

to undersigned Magistrate Judge).)[1]  For the reasons that follow, the instant Motions should be granted in part and denied in part in that the Court should enter judgment as a matter of law in favor of Defendants as to all claims except Plaintiff's claim for tortious interference with contract against Defendant Bowser in his individual capacity, but should decline to award attorneys' fees to Defendants under 42 U.S.C. § 1988.

## I. BACKGROUND

The instant action arises from a dispute regarding Plaintiff's termination from her position as Director of Social Services of the Durham County Department of Social Services ("DSS").  (See Docket Entry 3.)  Plaintiff filed her Complaint against Bowser, a county commissioner and a member of the DSS Board (in both his official and individual capacities), the Durham County Board of County Commissioners, the DSS Board, and Holt and Perry, members of the DSS Board (in their official capacities) "to recover damages and equitable relief from Defendants on account of Defendants' violations of Section 1983 of the Civil Rights Act (42 U.S.C.

---

[1] Also pending before the Court are: (1) the Motion to Dismiss filed by the Durham County Board of County Commissioners and Defendant Bowser in his official capacity (Docket Entry 22); (2) the Motion to Dismiss filed by Defendants Bowser, Holt, and Perry in their official capacities and the DSS Board (Docket Entry 24); and (3) the Motion to Dismiss of Defendant Bowser in his individual capacity (Docket Entry 26).  Given the procedural posture of this case and the Parties' opportunity to present fully developed arguments in connection with the pending summary judgment motions, the undersigned deems those motions to dismiss subsumed by the currently pending summary judgment motions.

-2-

§ 1983) and also violations of North Carolina statutory and common law." (Id., ¶ 3.)

Plaintiff began as Director of DSS on September 14, 2009. (See Docket Entry 81-1 at 2.)[2] The DSS Board at the time of Plaintiff's hire consisted of Defendants Bowser and Holt, Gladys Dunston, Newman Aguiar, and Gloria Green. (See Docket Entry 98-27 at 2; see also Docket Entry 3, ¶ 16.)[3] All except Defendant Bowser, who abstained from the vote, voted to hire Plaintiff. (See Docket Entry 98-21 at 3.) In late July 2011, nearly twenty-three months after Plaintiff's hire, the DSS Board, by this time consisting of Carolyn Carver-Tann and Defendants Bowser, Holt and Perry, terminated Plaintiff by a 3-1 vote, with Ms. Carver-Tann representing the sole opposition. (See Docket Entry 81-2 at 2.)

Plaintiff contends that Defendant Bowser orchestrated her termination after she resisted complying with his purportedly improper directives regarding the handling of DSS personnel and clients. (See generally Docket Entry 3.) In that regard, Plaintiff offered testimony that, "in the latter part of 2010"

_____

[2] All pin citations refer to the pagination in the footer appended to each document by the CM/ECF system. Facts related without qualification either reflect matters not disputed by the Parties or evidence viewed in the light most favorable to Plaintiff.

[3] The spelling of Mr. Aguiar's last name varies in the Parties' filings. (Compare Docket Entries 3, ¶ 24(a) ("Aguiar"), 27 at 2 ("Aguiar"), and 77 at 2 ("Aguiar"), with Docket Entries 93 at 2 ("Aguirre"), 95 at 2 ("Aguirre"), and 97 at 2 ("Aguirre").) The undersigned adopts the spelling in correspondence from the DSS Board as it appears in the record. (See, e.g., Docket Entries 81-1 at 1 ("Aguiar"); 84-1 at 2 ("Aguiar").)

(Docket Entry 84-16 at 7),[4] Defendant Bowser pressured Plaintiff to settle what Plaintiff viewed as a groundless EEOC claim with a Hispanic, former DSS employee and, in the course of doing so, told Plaintiff that she "cannot treat these folks the same way you treat blacks" (id. at 7-8);[5] that, in the fall of 2010, Defendant Bowser pressured Plaintiff to demote, rather than terminate, a DSS employee and to maintain that employee's pre-demotion salary after demotion (see id. at 12); that (also in the fall of 2010) Defendant Bowser improperly asked Plaintiff to consider the application of Marcia Conner for a position with DSS outside of the normal hiring process (see id. at 14-15); and that, in spring and summer 2011, Defendant Bowser interfered with the handling of certain DSS clients (see id. at 27-28).  Plaintiff ultimately refused to comply with the foregoing directives with the exception of the demotion in lieu of termination of the DSS employee (who Plaintiff demoted two levels and who had her salary lowered despite Defendant Bowser's request that she be demoted only one level and maintain her pre-

---

[4] This Memorandum Opinion cites to certain documents that were originally filed under seal but which are subject to unsealing pursuant to a prior Order of the Court (Docket Entry 112).  Those documents, once unsealed, will either replace the currently sealed versions in their current locations on the docket or will appear elsewhere on the docket as administrative needs dictate.

[5] In her deposition, Plaintiff originally presented the statement from Defendant Bowser as: "You don't understand.  You cannot treat non-African Americans the same way you do African Americans."  (Docket Entry 84-16 at 8.)  When asked to recall Defendant Bowser's statement "as close to a quote that you can get," Plaintiff phrased Defendant Bowser's comment as: "You don't understand.  You cannot treat these folks the same way you treat blacks."  (Id.)

-4-

demotion salary (see Docket Entry 99-12 at 3)). (See Docket Entry 84-16 at 16-18.) Moreover, Plaintiff testified that she relayed Defendant Bowser's allegedly improper comments/directives to county attorney Lowell Siler, deputy county manager Marqueta Welton, and interim county manager Michael Palmer, among others. (See, e.g., Docket Entry 104-1 at 5-6.)

In 2011, Defendant Bowser met with Defendant Perry, who was not yet a member of the DSS Board, at which time Defendant Bowser "mentioned concern about DSS under the leadership of [Plaintiff]" (Docket Entry 98-26 at 4) and asked whether Defendant Perry would consider a position on the DSS Board if one became available (id.). Defendant Bowser then convened a second meeting with Defendants Perry and Holt, in which Defendant Bowser suggested that Defendant Perry could become the interim director after Plaintiff's removal. (Id. at 6-10.) Subsequently, Defendant Bowser discouraged, and did not vote for, the reappointment to the DSS Board of Ms. Green (see Docket Entry 98-18 at 2-3), who (from Defendant Bowser's perspective) approved of Plaintiff's performance (see Docket Entry 84-10 at 8), and voted to appoint Defendant Perry (see Docket Entry 98-18 at 2). At Defendant Perry's first meeting as a member, the DSS Board rendered the 3-1 vote terminating Plaintiff's employment. (See Docket Entry 81-2 at 2; Docket Entry 3, ¶ 26.)

Plaintiff's performance reviews during her employment were in large part positive. (See Docket Entries 99-1, 99-2.) However, although, in Plaintiff's six-month review (dated April 21, 2010), the DSS Board "recommend[ed] that [Plaintiff] become[] a permanent

-5-

employee with [DSS] effective immediately" (Docket Entry 99-1 at 2), Defendant Holt testified that he would have voted for Plaintiff's termination had a formal vote occurred at that time (see Docket Entry 81-29 at 18) due to concerns regarding Plaintiff's "her way or the highway" management style (id. at 8), her relationships with community partners (id. at 12), and, ultimately, a belief that Plaintiff "was not a fit for [DSS]" (id. at 16). Similarly, according to Defendant Bowser's testimony, both Defendant Holt and then-DSS Board member Mr. Aguiar opposed making Plaintiff a permanent employee (see Docket Entry 84-10 at 3) and Defendant Bowser was "in the middle" because he "was not satisfied with . . . [her] performance" (id. at 6), but he "felt that it would be very unfair to take [her] out at that six-month interval" (id.). Plaintiff, in fact, knew of these issues as evidenced by her April 2010 e-mail to Mr. Aguiar requesting a meeting to address his "expressed concerns with [her] management style and profile in the Durham community." (Docket Entry 81-21 at 2.)

Similar criticisms plagued Plaintiff even a year later, when the April 2011 performance review that classified her performance as "most satisfactory" (Docket Entry 84-2 at 3) also noted the existence of "rough spots that must be addressed" (id.), described Plaintiff as only provisionally compliant in, among other areas, "Staff Treatment" (id. at 4) and noted in that regard: "[The DSS] Board raised concerns about staff/administrator relationships emphasizing the need for increased morale within the organizations and being kept abreast of outstanding complaints that employees

-6-

have or will file for EEOC intervention" (id. at 2). In addition, in an appearance before the DSS Board in April 2011 with Plaintiff in attendance, County Manager Mike Ruffin noted generally that he "found [Plaintiff] . . . to be impersonal and abrasive in her management style" (Docket Entry 84-17 at 3) - an opinion which he based on his own "personal observations [as well as] written complaints" (id. at 4) - and suggested that Plaintiff hire a job coach (see Docket Entry 84-12 at 5), which Plaintiff demonstratively declined to do (see Docket Entry 81-26 at 24-25).

Moreover, a number of DSS employees (or former DSS employees) raised concerns regarding Plaintiff's leadership. An unsigned letter addressed to Defendant Bowser complained that DSS "has hit rock bottom in just nine months . . . because [Plaintiff] is not a leader or a team player [and] is cold, rude, inconsiderate and rigid." (Docket Entry 81-3 at 3.) In another letter, a departing DSS employee noted that she "cannot work for [Plaintiff]" and further asserted that eight key staff members also left over management concerns. (Docket Entry 81-4 at 3.)[6] A third letter - in this case a resignation letter addressed to then-DSS Board member Dunston - also complained of an inability to work with Plaintiff and asserted that Plaintiff "made it a point to humiliate, intimidate, and harass [that employee]." (Docket Entry 81-6 at 2.)

_____

[6] Although the envelope containing this letter is addressed to Defendant Bowser, the letter itself is addressed to the "DSS Board Members." (See Docket Entry 81-4 at 2-3.)

Although Plaintiff has presented evidence that DSS employee morale was chronically low for reasons beyond her management style (see Docket Entry 98-29 at 4), that employee attrition under her watch was no more pronounced than in prior years (see id. at 4-5), and that the employees who complained of, or who were cited as having left due to, Plaintiff's management style all had independent reasons for departing/being terminated from DSS (see Docket Entry 99-16 at 1-8), Defendants Bowser, Holt and Perry testified that Plaintiff's leadership/managerial concerns and community relationship issues, rather than Plaintiff's action or inaction on Defendant Bowser's directives, led to their votes to fire Plaintiff (see Docket Entries 81-25 at 76-77; 84-14 at 6-10; 84-15 at 5-6, 8).

As a result of these events, the Complaint asserts claims for "Tortious Interference with Contract" (Docket Entry 3, ¶¶ 33-40); "Defamation and Slander" (id., ¶¶ 41-50); "Violation of 42 U.S.C. § 1983" (id., ¶¶ 51-66); "Whistleblower Claim" (id., ¶¶ 67-71); "Corum Claim" (id., ¶¶ 72-75); and "Wrongful Termination in Violation of Public Policy" (id., ¶¶ 76-78). Defendants have moved for summary judgment on each of Plaintiff's claims. (See Docket Entries 74, 76, 82.) Plaintiff has responded (see Docket Entries 92, 93, 94, 95, 96, 97) and Defendants have replied (see Docket Entries 108, 109, 110).

## II. <u>STANDARD</u>

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

-8-

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

To the extent the Court must draw conclusions about matters of North Carolina law in evaluating the instant Motions,[7] "the highest

---

[7] The Parties affirmatively cite North Carolina law as
(continued...)

court of the state is the final arbiter of what is state law. When
it has spoken, its pronouncement is to be accepted by federal
courts as defining state law unless it has later given clear and
persuasive indication that its pronouncement will be modified,
limited or restricted." West v. American Tel. & Tel. Co., 311 U.S.
223, 236 (1940). However, "[a] state is not without law save as
its highest court has declared it. There are many rules of
decision commonly accepted and acted upon by the bar and inferior
courts which are nevertheless laws of the state although the
highest court of the state has never passed upon them." Id.

Accordingly, "it is the duty of [a federal court facing a
question of state law] to ascertain from all the available data
what the state law is and apply it . . . ." Id. at 237. "Where an
intermediate appellate state court rests its considered judgment
upon the rule of law which it announces, that is a datum for
ascertaining state law which is not to be disregarded by a federal
court unless it is convinced by other persuasive data that the
highest court of the state would decide otherwise." Id.

### III. DISCUSSION

#### A. Tortious Interference with Contract
(against Defendant Bowser in his individual capacity)

Under North Carolina law, "[t]he elements of tortious
interference with contract are: (1) a valid contract between the

---

[7](...continued)
applying where state law controls. (See, e.g., Docket Entries 75
at 4-25; 77 at 14-19; 83 at 8-30; 93 at 13-35.) Because all events
relevant to this action occurred in North Carolina (see Docket
Entry 3), no reason exists to question this position.

-10-

plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to the plaintiff." Embree Constr. Grp., Inc. v. Rafcor, Inc., 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (citations omitted).[8]

Defendant Bowser contends that Plaintiff's claim fails because "Plaintiff has not made *any specific allegations* that an employment contract even existed, instead, Plaintiff has vaguely alleged [Defendant] Bowser intentionally interfered with an 'Agreement.'" (Docket Entry 77 at 15-16 (emphasis in original).)[9]  He goes on to

---

[8] It would appear that Defendant Bowser is a "non-outsider" with respect to Plaintiff's employment with DSS. See Griffin v. Holden, 180 N.C. App. 129, 140, 636 S.E.2d 298, 306 (2006) ("Defendant was not an outsider to plaintiff's employment contract under these circumstances because, as County Commissioner, he was partly responsible for making decisions as to Moore County employees."). Accordingly, because, under North Carolina law, "'non-outsiders' often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract," Lenzer v. Flaherty, 106 N.C. App. 496, 513, 418 S.E.2d 276, 286 (citing Smith v. Ford Motor Co., 289 N.C. 71, 221 S.E.2d 282 (1976)), disc. rev. denied, 332 N.C. 345, 421 S.E.2d 348 (1992), Defendant Bowser would not face liability unless he "pursued the termination of [Plaintiff's employment] without justification and with malice," Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc., 160 N.C. App. 520, 524, 586 S.E.2d 507, 510 (2003). In fact, "it [would not be] enough to merely show that [Defendant Bowser] acted with actual malice. Plaintiff must provide evidence that [Defendant Bowser] acted with legal malice." Robinson, Bradshaw & Hinson, P.A. v. Smith, 129 N.C. App. 305, 318, 498 S.E.2d 841, 851 (1998) (citation omitted). Regardless, on summary judgment, Defendant Bowser does not argue that Plaintiff lacks sufficient evidence regarding legal malice. (See Docket Entries 76, 77, 109.)

[9] Indeed, because Defendant Bowser argued only the sufficiency (continued...)

emphasize that, without such a contract, and because Plaintiff also failed to meet the 24-month employment period required for just cause termination rights under N.C. Gen. Stat. § 126-1.1, Plaintiff cannot maintain this claim. (See id. at 16.)

To the extent Defendant Bowser argues a lack of "any specific allegations that an employment contract even existed" (id. at 15-16 (emphasis removed)), the Complaint alleges that, "[f]rom September 2009 until July 2011, a valid contract right for employment existed between [Plaintiff] and DSS" and that "[Defendant] Bowser had specific knowledge of the facts giving rise to [Plaintiff's] contractual right of employment with DSS." (Docket Entry 3, ¶¶ 34-35.) Accordingly, this argument lacks merit. To the extent

---

[9](...continued)
of this first element of a tortious interference with contract claim, Plaintiff expressly declined to address the remaining elements in the body of her response brief. (See Docket Entry 93 at 14 ("[Defendant] Bowser argues only that [Plaintiff] cannot meet the first prong of these elements; he makes no arguments with regard to the viability of the remaining four prongs and, for that reason, [Plaintiff] need not address them.").) Moreover, because Defendant Bowser argued only this point in his main brief, the Court should decline to consider the newly raised argument appearing in Defendant Bowser's Reply that "Plaintiff has not and cannot show that she had 'an expectation that [her] employment would continue *but for* the defendant's actions'" (Docket Entry 109 at 9 (quoting Herman v. Lackey, No. 3:06CV251, 2007 U.S. Dist. LEXIS 41989, at *15 (W.D.N.C. June 7, 2007) (unpublished))). See Tyndall v. Maynor, 288 F.R.D. 103, 108 (M.D.N.C. 2013) ("Members of this Court . . . have consistently held that '[r]eply briefs . . . may not inject new grounds . . . [and that an] argument [that] was not contained in the main brief . . . is not before the Court.' Triad Int'l Maint. Corp. v. Aim Aviation, Inc., 473 F. Supp. 2d 666, 670 n.1 (M.D.N.C. 2006) (citing M.D.N.C. LR7.3(h)) (recommendation of Eliason, M.J., adopted by Beaty, J.); accord, e.g., Jarvis v. Stewart, No. 1:04CV642, 2005 WL 3088589, at *1 (M.D.N.C. Nov. 17, 2005) (unpublished) (Osteen, Sr., J.) ('[I]t is not appropriate to present such new argument in a reply.' (citing M.D.N.C. LR7.3(h))). The Court will adhere to this view.").

Defendant Bowser contends that the lack of employment for a definite term or any expectation of continued employment created by just cause termination rights forecloses Plaintiff's claim, Plaintiff concedes that "it is undisputed that [Plaintiff] entered into a contract for employment with DSS in July 2009, which does not, on its face, set forth a defined term of employment" (Docket Entry 93 at 14-15),[10] but argues that, regardless, "a claim for tortious interference with contract may be based on an at-will employment relationship" (id. at 15).

Authority supports Plaintiff's position. See, e.g., Combs v. City Elec. Supply Co., 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010) ("[A cause of action for tortious interference with a contract] has been found to be applicable to an employment contract that was terminable at will." (citing Smith v. Ford Motor Co., 289 N.C. 71, 85, 221 S.E.2d 282, 292 (1976), Childress v. Abeles, 240 N.C. 667, 678, 84 S.E.2d 176, 184 (1954), and Lenzer v. Flaherty, 106 N.C. App. 496, 512, 418 S.E.2d 276, 286, disc. review denied, 332 N.C. 345, 421 S.E.2d 348 (1992)); Esposito v. Talbert & Bright, Inc., 181 N.C. App. 742, 745, 641 S.E.2d 695, 697 (2007) ("'A plaintiff may maintain a claim for tortious interference with contract even if the employment contract is terminable at will.'" (quoting Bloch v. Paul Revere Life Ins. Co., 143 N.C. App. 228,

_____

[10] Defendant Bowser's Reply argues that Plaintiff's theory regarding the existence of an employment contract without a defined term of employment constitutes an improper effort to amend her Complaint by way of briefing. (See Docket Entry 109 at 9.) The Complaint, however, appears consistent with Plaintiff's summary judgment arguments. (See Docket Entry 3, ¶¶ 34-35.)

239, 547 S.E.2d 51, 59 (2001))). Thus, the question of whether Plaintiff met the requirements of N.C. Gen. Stat. § 126-1.1 to qualify for just cause termination rights, or whether Plaintiff had a contract for a definite term, is irrelevant to this inquiry. In the absence of any other basis for summary judgment on this claim in Defendant Bowser's instant Motion, the Court should permit Plaintiff's claim for tortious interference with contract to proceed.

### B. Defamation and Slander
### (against Defendant Bowser in his individual capacity)[11]

Before addressing the merits, Defendant Bowser disputes which statements properly serve as the basis for Plaintiff's defamation claim. (See Docket Entry 109 at 5-6.) The Complaint identifies only one statement with any specificity in relation to this claim - i.e., the statement made by Defendant Bowser or caused to be made by Defendant Bowser that Plaintiff's leadership "had been 'divisive and had led to the loss of longtime employees.'" (Docket Entry 3, ¶¶ 41-50.) Plaintiff never sought to file an Amended Complaint in this matter. (See Docket Entries dated Mar. 30, 2012, to present.) However, in opposing summary judgment, she presented ten different statements made or caused to be made by Defendant Bowser. (See Docket Entry 93 at 10-11.) Due to this discrepancy between the

---

[11] Slander constitutes a form of defamation. See Boyce & Isley, PLLC v. Cooper, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002) ("In North Carolina, the term defamation applies to the two distinct torts of libel and slander."), cert. denied, 540 U.S. 965 (2003). "In general, libel is written while slander is oral." Phillips v. Winston-Salem/Forsyth Cnty. Bd. of Educ., 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994).

-14-

Complaint and Plaintiff's briefing, Defendant Bowser has asserted that, because "a party may not use its briefs in support of or opposition to summary judgment to amend a complaint," Hexion Speciality Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) (unpublished), the Court should consider solely the statement that Plaintiff's leadership "had been 'divisive and had led to the loss of longtime employees.'" (Docket Entry 109 at 5-6.)

Plaintiff contends that, "in her Complaint, [she] identified that [Defendant] Bowser made multiple defamatory statements to a variety of media outlets, such as The News & Observer, The Herald Sun, and The Durham News. ([Docket Entry 3,] ¶¶ 24, 28, 32, 42-50.) Therefore, [Plaintiff] 'provided enough information to put [Defendant Bowser] on notice as to the type of claim and the factual allegations of the claim.'" (Docket Entry 93 at 24 n.18 (quoting Moore v. Cox, 341 F. Supp. 2d 570, 575 (M.D.N.C. 2004) (Tilley, C.J.)).) Those cited portions of the Complaint, however, do not support Plaintiff's argument. Although "neither the Federal Rules of Civil Procedure nor the Fourth Circuit impose a special or heightened pleading standard for defamation," Market Choice, Inc. v. New England Coffee Co., No. 5:08-CV-90, 2009 WL 2590651, at *5 (W.D.N.C. 2009) (unpublished), Plaintiff still must meet the standards of Federal Rule of Civil Procedure 8(a), see id., which requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal

-15-

citations omitted) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).[12]

As to the portions of the Complaint that Plaintiff cites in support of her defamation claim, paragraphs 24, 28, and 32 state:

>     24.    During the course of, and after the termination of, [Plaintiff's] employment, [Defendant] Bowser made false allegations to various individuals and entities about [Plaintiff].  For example:
>
>           a.    Upon information and belief, [Defendant] Bowser, DSS Board member Stan Holt and DSS Board Member Newman Aguiar made damaging and disparaging statements about [Plaintiff], which were published by various media outlets, including but not limited to The News & Observer and The Herald Sun.
>
>           b.    Upon information and belief, [Defendant] Bowser made false statements to County Commissioner Becky Heron, County Commissioner Ellen Reckhow, and County Manager Mike Ruffin regarding [Plaintiff's] performance.  Upon information and belief, Bowser's false statements were then repeated by Commissioners Reckhow and Heron to various media outlets, including but not limited to The News & Observer and The Durham News.
>
>     . . . .
>
>     28.    Upon information and belief, in calling for the termination of [Plaintiff's] employment, [Defendant] Bowser referenced letters written by Assistant Directors Sharon Hirsch and Atonia Pedroza to the DSS Board.  These letters contained false allegations about [Plaintiff].  Upon information and belief, these letters were released

---

[12] Although the Court looks to North Carolina law when analyzing Plaintiff's substantive state law claims, "pleading standards are a matter of procedural law governed in this Court by federal, not state law." <u>McFadyen v. Duke Univ.</u>, 786 F. Supp. 2d 887, 920 (M.D.N.C. 2011) (Beaty, C.J.) (citing <u>Jackson v. Mecklenburg Cnty., N.C.</u>, No. 3:07-cv-218, 2008 WL 2982468, at *2 (W.D.N.C. July 2008) (unpublished)), <u>rev'd in part on other grounds</u>, 703 F.3d 636 (4th Cir. 2012).

> to the press and cited by [Defendant] Bowser,
> [Defendant] Holt and Aguiar as factors in
> [Plaintiff's] dismissal. These statements are
> inconsistent with [Plaintiff's] performance
> reviews.
>
> . . . .
>
> 32. [Defendant] Bowser took action to terminate - and,
> through false representations about [Plaintiff], to
> encourage other DSS Board members to terminate -
> the employment of [Plaintiff] because she refused
> to follow his directives that would have violated
> state and federal law and that would have
> discriminated unlawfully against African-Americans.

(Docket Entry 3, ¶¶ 24, 28, 32.) Paragraphs 42-50, which formally

set out Plaintiff's defamation claim, contain similarly conclusory

allegations, such as that Defendant Bowser made statements that

were "false" (id., ¶¶ 42, 43, 44), that Defendant Bowser "knew

[they] were false" (id., ¶ 45), and that Defendant Bowser's actions

were "malicious and in reckless disregarding of [Plaintiff's]

rights" (id., ¶ 47).

As an initial matter, assertions that defamatory statements

"were known . . . to be false at the time they were made, were

malicious or were made with reckless disregard as to their veracity

[are] entirely insufficient [because these] kind of conclusory

allegation[s] - a mere recitation of the legal standard - [are]

precisely the sort of allegations that Twombly and Iqbal rejected."

Mayfield v. National Ass'n for Stock Car Auto Racing, Inc., 674

F.3d 369, 378 (4th Cir. 2012). Moreover, these allegations taken

as whole, even combined with the entirety of the Complaint, fail to

put Defendants on notice of the claims against them in a manner

that satisfies Twombly and Iqbal with the exception of the sole

-17-

allegation that Defendant Bowser communicated publicly that Plaintiff's leadership "had been divisive and had led to the loss of longtime employees" (Docket Entry 3, ¶ 42).

For example, Paragraph 24(a) lumps both Defendants and non-parties together in such a manner that makes it impossible to determine who allegedly took what actions. Paragraph 28, in turn, alleges only that Defendant Bowser "referenced" letters from former DSS employees. As a whole, the Complaint asserts only that these unspecified statements were "false" (see, e.g., id., ¶¶ 24, 28, 32, 42-44), "disparaging" (see, e.g., id., ¶ 24), or "damaging" (see, e.g., id.), but contains no factual matter that would allow even an inference that such statements were injurious to Plaintiff's "reputation, office, trade, business or means of livelihood or [held] [her] up to disgrace, ridicule or contempt," Cummings v. Lumbee Tribe of N.C., 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008) (internal quotation marks omitted), as required to establish slander per se, and contains no allegations of special damages resulting from such statements as required to establish slander per quod, id.

Regardless, as Defendant Bowser notes, the sole evidence that he made the additional statements that Plaintiff now presents in her summary judgment briefing consist of newspaper articles Plaintiff attached to her filing that attribute certain statements to Defendant Bowser. (See Docket Entry 109 at 10-11; see also Docket Entries 98-2 - 98-9.) However, the Fourth Circuit "has consistently held that newspaper articles are inadmissible hearsay

-18-

to the extent that they are introduced 'to prove the factual matter asserted therein.'" Gantt v. Whitaker, 57 F. App'x 141, 150 (4th Cir. 2003). Accordingly, left without evidence that Defendant Bowser made the alleged defamatory statements, Plaintiff's defamation claim based on those statements cannot survive summary judgment.

As to the sole statement both properly pled in the Complaint (see Docket Entry 3, ¶ 42) and supported by at least some record evidence (see Docket Entry 81-32 at 30) (i.e., that Plaintiff's leadership "had been 'divisive and had led to the loss of longtime employees'" (Docket Entry 3, ¶ 42)), Plaintiff appears to pursue a claim for slander per se (see Docket Entry 93 at 24), as to which she "must prove: '(1) defendant spoke or published base or defamatory words which tended to prejudice [her] in [her] reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person.'" Cummings, 590 F. Supp. at 774 (quoting Friel v. Angell Care, Inc., 113 N.C. App. 505, 509, 440 S.E.2d 111 (1994)). The alleged statement that Plaintiff's leadership "had been 'divisive and had led to the loss of longtime employees'" (Docket Entry 3, ¶ 42) does not "impeach[] [] Plaintiff's [] reputation for legality or integrity" and thus "does not rise to the level of defamation recognized under North Carolina law," Diagnostics Devices, Inc. v. Doctor Diabetic Supply, Inc., No. 3:09CV135-GCM, 2010 WL 143094, at *2 (W.D.N.C. Jan. 11, 2010)

-19-

(unpublished).  Accordingly, the Court should grant summary judgment to Defendant Bowser on Plaintiff's defamation claim.

## C. Violation of 42 U.S.C. § 1983 (against all Defendants)

"To state a claim under 42 U.S.C. § 1983, [a] plaintiff must allege facts demonstrating that some right secured by the federal constitution or federal law has been abridged." Ware v. Ford, 124 N.C. App. 613, 616, 478 S.E.2d 218, 220 (1996).  By way of her summary judgment briefing, Plaintiff contends that Defendants violated her constitutional rights by infringing on her Fourteenth Amendment property rights (Docket Entry 95 at 15-18), her Fourteenth Amendment liberty interests (id. at 18-20), and her First Amendment right to free speech (id. at 20-24).

### i. Defendant Bowser in his Individual Capacity

#### a. Fourteenth Amendment Property Rights

"In order to have a protected property interest in [] employment, a person must possess a legitimate claim of entitlement to it - created, for example, by contract or state law." Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 308 n.14 (4th Cir. 2006) (citing Board of Regents v. Roth, 408 U.S. 564, 569 (2006)).  Under North Carolina law, "[a]n employee is presumed to be an employee-at-will absent a definite term of employment or a condition that the employee can be fired only 'for cause.'" Wuchte v. McNeil, 130 N.C. App. 738, 740, 505 S.E.2d 142, 144 (1998). Defendant Bowser contends that, because Plaintiff held employment for an indefinite term, and because Plaintiff held such employment

-20-

for less than the requisite 24-month period established by N.C. Gen. Stat. § 126-1.1 to warrant just-cause termination rights, she was an at-will employee who lacked any right to continued employment and thus any property interest actionable under the Fourteenth Amendment. (See Docket Entry 77 at 20-21.)[13] Defendant's position has merit.

North Carolina law provides that "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen. Stat. § 126-35 (emphasis added). A "career State employee," in turn, is

> a State employee or an employee of a local entity who is covered by this Chapter pursuant to [N.C. Gen. Stat. §] 126-5(a)(2) who:
>
> > (1) Is in a permanent position appointment; and
> >
> > (2) Has been continuously employed by the State of North Carolina or a local entity as provided in [N.C. Gen. Stat. §] 126-5(a)(2) in a position subject to the State Personnel Act for the immediate 24 preceding months.

N.C. Gen. Stat. § 126-1.1. Thus, because Plaintiff held her position as DSS Director for less than 24 months, she did not qualify as a "career State employee" and did not have any right to continued employment or just-cause termination under N.C. Gen. Stat. § 126-1.1.

---

[13] Plaintiff concedes that her employment was for an indefinite term. (See Docket Entry 93 at 14-15.) Thus, the Court need only determine whether Plaintiff possessed just-cause termination rights.

-21-

In support of a contrary conclusion, Plaintiff argues that _Early v. County of Durham Dep't of Soc. Servs._, 172 N.C. App. 344, 350-54, 616 S.E.2d 553, 558-61 (2005), rejected this same argument. (_See_ Docket Entry 93 at 16.)  The _Early_ court, however, relied on an earlier version of N.C. Gen. Stat. § 126-1.1 that lacked any reference to "a local entity" in its definition of a "career State employee." _Early_, 172 N.C. App. at 352, 616 S.E.2d at 559 (quoting N.C. Gen. Stat. § 126-1.1 (2003)).  Based on that omission, the _Early_ court observed that it had "identified no expression of intent by the General Assembly to differentiate among local government employees in the same manner that it chose to differentiate among State employees."  _Id._ at 353, 616 S.E.2d at 560.  That is, because N.C. Gen. Stat. § 126-5(a)(2)(b) specifically applied the State Personnel Act to all employees of local social services departments, and N.C. Gen. Stat. § 126-1.1 made no mention of local entity employees who had been employed less than 24 months receiving different treatment from those employed longer than 24 months, the _Early_ court held that DSS employees qualified for just-cause termination rights without holding employment for 24 months.  _Id._ at 354, 616 S.E.2d at 560-61.  In contrast, the current version of N.C. Gen. Stat. § 126-1.1's specific application to "a State employee _or an employee of a local entity_," N.C. Gen. Stat. § 126-1.1 (emphasis added), explicitly provides the "expression of intent by the General Assembly," _Early_, 172 N.C. App. at 353, 616 S.E.2d at 560, that the court found lacking in _Early_.  Accordingly, without 24 months of

-22-

continuous employment, Plaintiff remained an at-will employee of DSS without expectation of continued employment and thus without property rights.

This conclusion, however, does not end the inquiry because, "'even if a government employee is at-will, he may still allege an entitlement to termination 'for cause' if he can show the existence of rules and understandings, promulgated and fostered by state officials promoting such a procedure'" (Docket Entry 93 at 16-17 (quoting <u>Andrew v. Clark</u>, 561 F.2d 261, 269-70 (4th Cir. 2009) (some internal quotation marks omitted))). In support of this position, Plaintiff argues that, "in April 2010, DSS and [the Durham County Board of County Commissioners] intended to confer due process rights upon [Plaintiff], and that [Plaintiff] understood that she was entitled to such due process rights" (<u>id.</u> at 17) and cites the April 2010 recommendation of the DSS Board "that [Plaintiff] become[] a permanent employee with Durham County [DSS] effective immediately" (<u>see</u> Docket Entry 99-1 at 2). Despite her understanding, under the North Carolina Administrative Code, "[p]ermanent appointments do not confer career status. Career status is achieved only when the conditions set out in [N.C. Gen. Stat. §] 126-1.1 are met." 25 N.C. ADMIN. CODE 01I.2002(c) (2009).[14] Accordingly, the granting of permanent status did not affect

_____

[14] "A permanent appointment is an appointment to a permanently established position when the incumbent is expected to be retained on a permanent basis. Permanent appointments follow the satisfactory completion of a probationary or trainee appointment, or may be made upon reinstatement of a qualified employee." N.C. ADMIN. CODE 01I.2002(c) (2009).

-23-

Plaintiff's at-will employment and, because Plaintiff remained an at-will employee without expectation of continued employment, her claim for violation of 42 U.S.C. § 1983 for deprivation of her property rights fails. See Andrew, 561 F.3d at 270 ("'A public employee in an at-will position cannot establish [a legitimate claim of entitlement to his job under state or local law], and thus cannot claim any Fourteenth Amendment due process protection.'" (quoting Roth, 408 U.S. at 577-78)).

b. Fourteenth Amendment Liberty Interest

"To state this type of liberty interest under the Due Process Clause, a plaintiff must allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." Sciolino v. City of Newport News, Va., 480 F.3d 642, 645-46 (4th Cir. 2007) (citing Stone v. University of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)). Plaintiff's Complaint lacks any allegations regarding a deprivation of her Fourteenth Amendment liberty interests. (See Docket Entry 3, ¶¶ 51-66.) Rather, the entirety of the allegations under the claim entitled "Violation of 42 U.S.C. § 1983, against the Defendants" addresses Defendant Bowser's purported actions in orchestrating Plaintiff's termination and the DSS Board and the County Commissioner's alleged "widespread practice" of both allowing Defendant Bowser to take such actions and relying on false statements made by Defendant Bowser. (Id.) The Complaint does not identify any contemporaneous or post-termination statements

-24-

stigmatizing Plaintiff's reputation.  (Id.)  Accordingly, because "a party may not use its briefs in support of or opposition to summary judgment to amend a complaint," Hexion, 2011 WL 4527382, at *7, Plaintiff may not pursue any purported violation of 42 U.S.C. § 1983 based on a deprivation of her liberty interest.[15]

### c.  First Amendment Retaliation

"The First Amendment protects public employees from termination of their employment in retaliation for their exercise of free speech on matters of public concern." McVey v. Stacy, 157 F.3d 271, 277 (4th Cir. 1998).  To survive summary judgment on this claim, Plaintiff must establish that: (1) the speech at issue relates to matters of public concern; (2) her interest in speaking outweighs Defendants' interest in providing effective and efficient services to the public; and (3) "'a causal relationship [existed] between the protected expression and the retaliation [in] that the protected speech was a "substantial factor" in the decision to take the allegedly retaliatory action,'" Hinton v. Conner, 366 F. Supp. 2d 297, 306 (M.D.N.C. 2005) (Tilley, C.J.) (quoting Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 351 (4th Cir.

---

[15] In her briefing, Plaintiff points to the same statements that she contends form the basis of her defamation claim as supporting her Fourteenth Amendment liberty interest claim.  (See Docket Entry 93 at 18.)  Accordingly, even if the Complaint were sufficient such that the Court proceeded to address the merits of this claim, it would fail (like her defamation claim) because of the lack of admissible evidence that Defendant Bowser made the statements in question and/or because the one statement the record supports finding he did make (regarding "divisive" leadership and loss of longtime employees) did not rise to the level of defamation.

2000)).  See Adams v. Trustees of the Univ. of N.C.-Wilmington, 640

F.3d 550, 560-61 (4th Cir. 2011); see also McVey, 157 F.3d at 277.

Plaintiff, through her summary judgment briefing, appears to

outline four purported expressions on her part that support her

First Amendment claim: (1) concerns she expressed to Ms. Welton and

Mr. Siler regarding Defendant Bowser's alleged statement to

Plaintiff: "'You don't understand.  You cannot treat these folks

the same way you treat blacks.'" (Docket Entry 104-1 at 4; Docket

Entry 3, ¶ 23(f)); (2) statements she made to Mr. Palmer regarding

Defendant Bowser's advocacy for the hiring of Ms. Conner without

requiring application through proper channels (Docket Entry 104-1

at 42; Docket Entry 3, ¶ 23(e)); (3) concerns she expressed to Mr.

Palmer and Ms. Welton regarding Defendant Bowser's directive

regarding the demotion/termination of a DSS employee (Docket Entry

3, ¶ 23(d)); and (4) her objections to Defendant Bowser's

interference in the handling of DSS clients (Docket Entry 104-1 at

31-32; Docket Entry 3, ¶ 23(c)).  (See Docket Entry 93 at 20-24.)

As an initial matter, the evidence does not support a finding

that Plaintiff even made an utterance that would provide the basis

for a First Amendment claim with regard to Defendant Bowser's

directives on the hiring of Ms. Conner.  Plaintiff's brief cites

pages 185-87 of her own deposition and page 46 of Mr. Palmer's

deposition for the assertion that, "in June 2011, [Plaintiff]

reported to Interim County Manager Michael Palmer that [Defendant]

Bowser had directed her to use corrupt hiring practices in

contravention of merit-based employment policies."  (Docket Entry

-26-

93 at 8.) Pages 185 and 186 of Plaintiff's deposition refer generally to complaints about Defendant Bowser's purportedly "wrongful and unlawful conduct and activities" (Docket Entry 98-27 at 12), but, in terms of specific examples, reflect only Plaintiff's testimony that she informed Mr. Palmer of "[Defendant] Bowser's comment and intervention in the . . . one [case] about child support [and] the other about possible termination of parental rights." (Id. at 12). The cited testimony makes no mention of Ms. Conner. (See id. at 11-12.) Similarly, page 187 of Plaintiff's deposition refers only to a scenario regarding a DSS client unrelated to Ms. Conner. (See Docket Entry 104-1 at 44.) Finally, page 46 of Mr. Palmer's deposition offers only the following discussion of Ms. Conner:

> Q: Do you know anything about an incident in which [Defendant] Bowser asked [Plaintiff] to hire Marcia Conner in DSS?
>
> A: Marcia Conner?
>
> Q: The former city manager.
>
> A: Right, right, right. I think we may have had -- talked about that. (Indicating.) I think I heard that one.
>
> Q: You pointed to [Plaintiff]. So had you and [Plaintiff] talked about that?
>
> A: Well, we do attend the same church so I think that might have -- I think I heard that -- I heard of that.

(Docket Entry 98-24 at 1.) This evidence, even taken in the light most favorable to Plaintiff, does not establish that she spoke out

-27-

against Defendant Bowser's alleged improper directives regarding hiring Ms. Conner.

Similarly, as to the handling of DSS clients, Plaintiff points to "an email [she sent] on July 8, 2011 to [Mr.] Siler [and] [Ms.] Welton, with a copy to [Defendant] Bowser, reporting [Defendant] Bowser's interference with two DSS client matters." (Docket Entry 93 at 8 (citing Docket Entry 99-4).) Plaintiff's brief argues that, in said e-mail, she "expressed her concerns that [Defendant] Bowser's improper interference 'ha[d] a negative impact on staff[']s attempt to keep at risk children safe which is [DSS's] legislative charge,' and that 'second guessing our practice has more of a negative impact on staff than retirements and resignations.'" (Docket Entry 93 at 8 (quoting Docket Entry 99-4 at 2).) In fact, however, the e-mail at issue complains generally of County Commissioners' "second guessing [DSS's] practice," and makes no mention of Defendant Bowser. (See Docket Entry 99-4).

Moreover, the Court, analyzing the "content, form, and context [of Plaintiff's speech] . . . as revealed by the whole record," Connick v. Myers, 461 U.S. 138, 147-48 (1983), should conclude that Plaintiff's statements on these two matters, as well as those referring to Defendant Bowser's directives regarding the demotion of a DSS employee, did not address matters of public concern. "'Because almost anything that occurs within a public agency could be of concern for the public [the Court must] not focus on the inherent interest of the importance of the matters discussed by the employee. Rather, [the Court's] task is to decide whether the

-28-

speech at issue . . . was made primarily in the plaintiff's role as a citizen or primarily in his role as employee.'" DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995) (quoting Terrell v. University of Tex. Sys. Police, 792 F.2d 1360, 1362 (5th Cir. 1986)). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as an employee." Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992).[16] Likewise, "mere allegations of favoritism, employment rumors, and other complaints of interpersonal discord" do not qualify as matters of public concern lest "virtually every remark - and certainly every criticism directed at a public official - would plant the seed of a constitutional case." Goldstein, 218 F.3d at 352 (citation omitted).

With respect to Defendant Bowser's directives on the hiring of Ms. Conner, Plaintiff contends that "there can be little question as to the speech touching upon public concern with shining daylight on a public official's attempt to suborn public appointments with . . . cronyism." (Docket Entry 95 at 22.) The evidence, however, offers no support that Plaintiff conveyed any feelings of impropriety regarding Ms. Conner, particularly with respect to

---

[16] Whether speech fairly relates to a public concern or expresses a private grievance or a matter of immediate self-interest constitutes an "an issue [] of law, not fact, for the court to decide." Stroman, 981 F.2d at 156.

"cronyism" as Plaintiff now contends. In sum, the record does not support a finding that Plaintiff sought "to communicate to the public or to advance a political or social point of view beyond the employment context," Borough of Duryeah, Pa. v. Guarnieri, ___ U.S. ___, ___, 131 S. Ct. 2488, 2501 (2011).

Plaintiff's statements regarding Defendant Bowser's alleged interference with the demotion/termination of a DSS employee are similarly deficient. As an initial matter, the issue of whether Defendant Bowser urged the demotion, rather than termination, of a DSS employee does not rise to the level of something that "the 'public' or the 'community' is likely to be truly concerned with or interested," Goldstein, 218 F.3d at 352. Moreover, when viewed as to its overall "content, form, and context," Connick, 461 U.S. at 147-48, Plaintiff's remarks regarding this subject do not represent commentary on matters of public concern, but instead constitute matters "more immediately concerned with the self-interest of [Plaintiff] as an employee," Stroman, 981 F.2d at 156.

Plaintiff's purported expressions of concern regarding Defendant Bowser's interference in the handling of DSS client matters fails as well. As noted above, the e-mail Plaintiff points to as supporting this theory does not mention Defendant Bowser and, to the extent it qualifies as a complaint at all, in Plaintiff's words, it "expressed her concerns that . . . improper interference 'ha[d] a negative impact on staff[']s attempt to keep at risk children safe which is [DSS's] legislative charge,' and that 'second guessing [DSS's] practice has more of a negative impact on

-30-

staff than retirements and resignations.'" (Docket Entry 93 at 8 (quoting Docket Entry 99-4 at 2).) Such concerns, however, would fall directly under Plaintiff's duties and responsibilities as DSS Director. Accordingly, because, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline," Garcetti v. Ceballos, 547 U.S. 410, 421 (2006), Plaintiff cannot ground a First Amendment claim on such matters.

The only purported complaint by Plaintiff that arguably could support this cause of action concerns Defendant Bowser's alleged statement regarding disparate treatment of Hispanics and African-Americans; however, Plaintiff fails to offer any evidence connecting any statement she made regarding that subject to her termination. Plaintiff testified that she "think[s] [she] might have shared [her concern/complaint] with [Mr.] Siler [and] [Ms.] Welton. I also believe Michael Palmer, but I'm clear about Siler and Welton." (Docket Entry 104-1 at 5-6.) However, Plaintiff has come forward with no evidence that Defendants Bowser, Perry or Holt knew of Plaintiff's report on the matter, whether by way of a third-party or from Plaintiff herself. Indeed, Plaintiff can recall nothing else besides the statement itself that took place in her conversation with Defendant Bowser (see Docket Entry 104-1 at 5) and does not remember whether Defendant Bowser contacted her on that subject again (id.). Under these circumstances, although the element of causation generally represents a question of fact, see

-31-

<u>Hinton</u>, 366 F. Supp. 2d at 306, because the record lacks any evidence that the members of the DSS Board responsible for Plaintiff's termination knew that she objected to Defendant Bowser's remark, summary judgment on this element is appropriate. See <u>Constantine v. Rectors and Visitors of George Mason Univ.</u>, 411 F.3d 474, 501 (4th Cir. 2005) ("In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of her engaging in protected activity."); <u>Dowe v. Total Action Against Poverty in Roanoke Valley</u>, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the [causation] element of the prima facie case.").

     ii. <u>Board of County Commissioners, DSS Board, and Defendants Bowswer, Holt, and Perry in their official capacities</u>

Because Plaintiff has presented insufficient evidence to survive summary judgment as to an underlying constitutional violation, her Section 1983 claims against the DSS Board, the Durham County Board of County Commissioners, and Defendants Bowser, Holt, and Perry, in their official capacities, necessarily fail as well. See <u>Waybright v. Frederick Cnty., MD</u>, 528 F.3d 199, 203 (4th Cir. 2008) ("[S]upervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [] officer,' at least in suits for damages.'" (quoting <u>City of Los Angeles v. Heller</u>, 475 U.S. 796,

-32-

799 (1986)); <u>Boston v. Davis</u>, No. 3:11CV450-MOC-DSC, 2011 WL 6826812, at *6 (W.D.N.C. Dec. 5, 2011) (unpublished) ("Since there is no underlying constitutional violation by [the defendant] in his individual capacity, [the] [p]laintiff's official capacity claims against [the defendant] should also be dismissed."); <u>see also</u> <u>Russ v. Causey</u>, 732 F. Supp. 2d 589, 604 (E.D.N.C. 2010) ("[A Section 1983] claim fails as a matter of law where there is no underlying constitutional violation.").[17]

### D. Whistleblower Claim (against all Defendants)

Under the Whistleblower Claim, the Complaint alleges that, "[a]s a direct consequence of [Plaintiff's] complaints and other protected activities, [Plaintiff's] employment with DSS was terminated." (Docket Entry 3, ¶ 69.) In pertinent part, the North Carolina Whistleblower Act provides:

> (a) It is the policy of this State that State employees shall be encouraged to report verbally or in writing to their supervisor, department head, or other appropriate authority, evidence of activity by a State agency or State employee constituting:

---

[17] Defendants contend that neither the DSS Board nor the Durham County Board of County Commissioners are subject to suit. (<u>See</u> Docket Entry 75 at 1 n.1.) Authority appears to support that position. <u>See</u> <u>Avery v. Burke County</u>, 660 F.2d 111, 113-14 (4th Cir. 1981) ("Neither the Board of Health nor the Board of Social Services is a legal entity separate and apart from the county. Both boards are created by, and are extensions of, the county. Consequently, if [the plaintiff] is entitled to recover damages under [section] 1983 because of the boards' conduct, the county would be liable." (internal citation omitted)); <u>Piland v. Hertford Cnty. Bd. of Comm'rs</u>, 141 N.C. App. 293, 296, 539 S.E.2d 669, 671 (2000) (holding county proper party as opposed to Board of County Commissioners). However, because the claims against these Defendants fail to survive summary judgment, the Court need not reach this issue.

-33-

> > (1)  A violation of State or federal law, rule
> > or regulation;
>
> > (2)  Fraud;
>
> > (3)  Misappropriation of State resources;
>
> > (4)  Substantial and specific danger to the public
> > health and safety; or
>
> > (5)  Gross mismanagement, or gross waste of monies, or
> > gross abuse of authority.
>
> > (b)  Further, it is the policy of this State that State
> > employees be free of intimidation or harassment
> > when reporting to public bodies about matters of
> > public concern, including offering testimony to or
> > testifying before appropriate legislative panels.

N.C. Gen. Stat. § 126-84.  The Whistleblower Act further states:

> No head of any State department, agency or
> institution or other State employee exercising
> supervisory authority shall discharge, threaten or
> otherwise discriminate against a State employee regarding
> the State employee's compensation, terms, conditions,
> location, or privileges of employment because the State
> employee, or a person acting on behalf of the employee,
> reports or is about to report, verbally or in writing,
> any activity described in [N.C. Gen. Stat. §] 126-84
> unless the State employee knows or has reason to believe
> that the report is inaccurate.

N.C. Gen. Stat. § 126-85(a).

"The Supreme Court of North Carolina has held that a claim against an individual under North Carolina's Whistleblower Statute contains the same elements as a federal First Amendment retaliation claim."  Jensen v. Western Carolina Univ., No. 2:11cv33, 2012 WL 6728360, at *17 n.8 (W.D.N.C. Dec. 28, 2012) (unpublished) (citing Newberne v. Department of Crime Control & Pub. Safety, 359 N.C. 782, 618 S.E.2d 201 (2005)).  Accordingly, the analysis of the Whistleblower Claim against Defendant Bowser in his individual

-34-

capacity mirrors the foregoing analysis of Plaintiff's First Amendment claim and, for those same reasons, warrants entry of judgment for Defendant Bowser as a matter of law. In addition, because that same analysis reveals a lack of evidence supporting a finding that Plaintiff complained or that, if she did complain, that those complaints caused her termination, this claim fails against the remaining Defendants as well.

### E. Corum Claim (against all Defendants)

"In the absence of an adequate state remedy . . ., one whose state constitutional rights have been abridged has a direct claim for monetary damages against the State under the North Carolina Constitution, known as a 'Corum Claim.'" Fothergill v. Jones Cnty. Bd. of Educ., No. 4:09-CV-190-BO, 2010 WL 4338101, at *3 (E.D.N.C. Oct. 22, 2010) (unpublished) (citing Corum v. University of N.C. through Bd. of Governors, 330 N.C. 761, 783-87, 413 S.E.2d 276, 290-92 (1992)). In the instant action, Plaintiff bases her Corum claim on the lack of an adequate state remedy for Defendants' deprivations of her Fourteenth Amendment property and liberty rights. (See Docket Entry 95 at 33.) Because, as discussed above, Defendants are entitled to summary judgment on those theories of liability, Plaintiff's Corum claim necessarily fails as well.

### F. Wrongful Termination in Violation of Public Policy (against the DSS Board)

As an initial matter, the DSS Board contends that the Court lacks jurisdiction over Plaintiff's wrongful discharge claim because Plaintiff failed to allege a waiver of governmental

immunity.  (See Docket Entry 83 at 28-29.)  "'Services provided by local Departments of Social Services are governmental functions to which governmental immunity applies.'"  White v. Stokes Cnty. Dep't of Soc. Servs., 207 N.C. App. 378 (table), 699 S.E.2d 686 (table), No. C0A09-1567, 2010 WL 3859789, at *2 (2010) (unpublished) (quoting Whitaker v. Clark, 109 N.C. App. 379, 381, 427 S.E.2d 142, 143, disc. review denied, 333 N.C. 795, 431 S.E.2d 31 (1993)); see also Bess v. County of Cumberland, ___ N.C. App. ___ (table), 722 S.E.2d 13 (table), No. COA11-1044, 2012 WL 538824, at *3 (2012) (unpublished) ("In the case at bar, the County, through its agents, took part in a governmental function by terminating plaintiff; thus, the County is entitled to governmental immunity for the tort claims relating to plaintiff's claim for wrongful discharge.").  "In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity.  Absent such an allegation, the complaint fails to state a cause of action."  Dalenko v. Wake Cnty. Dep't of Human Servs., 157 N.C. App. 49, 55, 578 S.E.2d 599, 603 (2003) (internal quotation marks and citation omitted); see also Arrington v. Martinez, ___ N.C. App. ___, ___, 716 S.E.2d 410, 417 (2011) ("[O]ur courts have held that immunity raises a jurisdictional issue . . . .").  Accordingly, because the Complaint fails to allege the necessary waiver of governmental immunity (see Docket Entry 3), Plaintiff's wrongful discharge claim cannot proceed, see Paquette v. County of Durham, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002) ("Plaintiff's complaint does not allege defendants

-36-

waived their sovereign immunity. This Court has consistently disallowed claims based on tort against governmental entities when the complaint failed to allege a waiver of immunity. A claim for wrongful discharge in violation of public policy is a tort claim. Accordingly, the trial court did not err in dismissing plaintiff's claim for wrongful discharge against the County of Durham on the basis of sovereign immunity." (internal citations omitted)).

Plaintiff argues that "her Complaint only needs to 'contain sufficient allegations to provide a reasonable forecast of waiver'" (Docket Entry 97 at 32 n.22 (quoting Fabrikant v. Currituck Cnty., 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005))) and that she satisfied this requirement by alleging that: (1) "DSS entered into a valid contract for employment with [Plaintiff]" (id. at 32); and (2) "even if a valid contract for employment did not exist, DSS committed to providing [Plaintiff] with just cause dismissal rights and to follow the statutory mandates of the North Carolina Equal Employment Practices Act ('NCEEPA')" (id. at 33). Plaintiff thus appears to rely on the principle that "whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract," Moore v. North Carolina Co-op. Extension Serv., 146 N.C. App. 89, 92, 552 S.E.2d 662, 665 (2001). (See Docket Entry 97 at 32 (citing Moore).) Plaintiff, however, is not pursuing a claim for breach of contract such that her allegations regarding a contract would bear upon the waiver of governmental immunity. (See Docket Entry 3.)

-37-

Under North Carolina law, a county may waive its liability <u>for tort claims</u> (such as Plaintiff has brought) through the purchase of liability insurance or participation in a local government risk pool. <u>See</u> N.C. Gen. Stat. 153A-435(a); <u>see also</u> <u>Dickens v. Thorne</u>, 110 N.C. App. 39, 43, 429 S.E.2d 176, 179 (1993) ("[A] municipality may waive its governmental immunity for civil liability in tort for negligent or intentional damage by purchasing liability insurance, but only to the extent of the insurance coverage."). Because the Complaint lacks any allegations regarding the purchase of liability insurance or participation in a government risk pool, or even allegations consistent with the same (<u>see</u> Docket Entry 3), and because Plaintiff has not presented any evidence on this matter on summary judgment, her wrongful discharge claim cannot proceed.

Regardless, even if Plaintiff sufficiently alleged a waiver of governmental immunity, her claim fails on the merits. "Although the discharge of an employee-at-will normally does not support an action for wrongful termination of employment, North Carolina courts have developed a public policy exception to the general rule." <u>Teleflex Info. Sys., Inc. v. Arnold</u>, 132 N.C. App. 689, 691, 513 S.E.2d 85, 87 (1999). "There is no specific list of what actions constitute a violation of public policy . . . . However, wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employee contrary to law or public policy." <u>Whitings v. Wolfson Casing</u>

-38-

Corp., 173 N.C. App. 218, 221, 618 S.E.2d 750, 752-53 (2005) (citation omitted). "In order to support a claim for wrongful discharge of an at-will employee [in violation of public policy,] the termination itself must be motivated by an unlawful reason or purpose that is against public policy." Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). "Under this public policy exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy." Salter v. E & J Healthcare, Inc., 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003).

Plaintiff has failed to carry this burden because she has presented insufficient evidence for a reasonable fact finder to conclude that her termination was "motivated by an unlawful reason or purpose that is against public policy," Garner, 350 N.C. at 572, 515 S.E.2d at 441. Through her briefing, Plaintiff contends that her termination occurred because of her refusal to violate N.C. Gen. Stat. § 143-422.2, which provides in pertinent part:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race . . . [or] color . . . by employers which regularly employ 15 or more employees.

(See Docket Entry 97 at 33 n.23; see also id. at 34 ("Had [she] complied with [Defendant] Bowser's directives to treat employees differently on the basis of race, she would have violated [N.C. Gen. Stat. § 143-422.2].").)[18]

---

[18] The DSS Board contends that, because its sole employee is
(continued...)

Plaintiff points to only two alleged directives by Defendant Bowser that she contends had a racial component: (1) Defendant Bowser's urging Plaintiff to settle the EEOC claim of a Hispanic employee combined with the alleged statement from Defendant Bowser that Plaintiff "doesn't understand. [She] cannot treat these folks the same way [she] treat[s] blacks." (Docket Entry 104-1 at 4); and (2) Defendant Bowser's urging of Plaintiff to demote, rather than terminate, a Caucasian DSS employee (id. at 15). (See Docket Entry

---

[18](...continued)
Plaintiff, it does not "regularly employ 15 or more employees" and thus N.C. Gen. Stat. § 143-422.2 does not apply to it. (See Docket Entry 83 at 28.) However, it would seem that the inquiry should focus on whether, if Plaintiff adhered to the alleged directive, she would have violated N.C. Gen. Stat. § 143-422.2, and thus the relevant question becomes whether N.C. Gen. Stat. § 143-422.2 applies to DSS as opposed to the DSS Board. The DSS Board has not argued that position. (See Docket Entry 83.) The DSS Board also contends that Plaintiff cannot maintain a wrongful discharge claim based on N.C. Gen. Stat. § 143-422.2. (See Docket Entry 83 at 29.) In support, the DSS Board cites McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003), for its statement that "there is no private right of action under North Carolina law for retaliation under § 143-422.2." McLean, however, addressed a direct cause of action under Section 143-422.2. See id. In fact, in the paragraphs following the portion of McLean cited by the DSS Board, the Fourth Circuit recognized that Section 143-422.2 "does apply to common law wrongful discharge claims." Id. at 720 (internal quotation marks omitted). Moreover, unlike in EEOC v. Safelite Glass Corp., No. 4:10-CV-102-F, 2012 WL 3266333, at *14 (E.D.N.C. Aug. 9. 2012) (unpublished), which the DSS Board also cites, Plaintiff's claim does not appear to rest on "pure retaliatory discharge" in that Plaintiff not only asserts that the DSS Board terminated her because of her complaints regarding Defendant Bowser's directives which might have violated the public policy of North Carolina as stated in N.C. Gen. Stat. § 143-422.2, but also that the DSS Board terminated her because she refused to take an action which would have directly violated the public policy of North Carolina as stated in N.C. Gen. Stat. § 143-422.2.

-40-

97 at 33.)[19]  Neither, however, suffices to support her instant claim.

As to the first, as discussed in Section III.C.i.c, Plaintiff has presented no evidence that Defendants Bowser, Holt or Perry knew of Plaintiff's opposition to the foregoing circumstances, whether by way of Plaintiff directly or from those to whom Plaintiff purportedly complained.  As to the second (i.e., Defendant Bowser's alleged efforts to have a Caucasian DSS employee demoted rather than terminated), Defendant Bowser's actions lack an inherent racial component and Plaintiff offers mere speculation that Defendant Bowser acted based on race.  Moreover, Plaintiff in fact refrained from firing the employee in question as Defendant Bowser requested, such that he would have lacked a basis to infer that Plaintiff objected to his position.  Finally, and most critically, although the evidence supports a finding that Defendant Bowser knew of these events due to his direct involvement, the record does not reflect that any other member of the DSS Board knew of this situation in any respect or that Defendants Bowser, Holt or Perry knew of Plaintiff's complaint regarding the same, again undermining Plaintiff's claim.  As a result, Plaintiff's evidence that her termination was "motivated by an unlawful reason or purpose that is against public policy," Garner, 350 N.C. at 572, 515 S.E.2d at 441, or "occurred for a reason that violates public

_____

[19] Plaintiff cannot point to Defendant Bowser's alleged urging of Plaintiff to hire Ms. Conner to support this claim because, as Plaintiff concedes, Ms. Conner is African-American.  (See Docket Entry 104-1 at 42.)

-41-

policy," Salter, 155 N.C. App. at 693, 575 S.E.2d at 51, cannot survive summary judgment.

## G. Attorneys' Fees

Defendants seek attorneys' fees on the basis that "Plaintiff's entire § 1983 claim is frivolous, unreasonable, *and* without foundation." (See Docket Entry 83 at 30 (emphasis in original); see also Docket Entry 75 at 34-35; Docket Entry 77 at 34-35.) By statute:

> In any action or proceeding to enforce a provision of section[] 1983 of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988. The Court should award such fees to a prevailing defendant only where the plaintiff's claim is "frivolous, unreasonable, or groundless, or the plaintiff . . . continued to litigate after the claim clearly became so." Unus v. Kane, 565 F.3d 103, 127 (4th Cir. 2009) (internal quotation marks and brackets omitted).) In making this determination,

> "[i]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."

Id. (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)).

Under this standard, the Court should decline to award attorneys' fees to Defendants. Although the Court should find for Defendants as a matter of law on Plaintiff's Section 1983 claims,

-42-

those claims do not suffer from the extreme deficiencies required to warrant relief for Defendants under Section 1988. <u>See</u> <u>Hunt v. Lee</u>, 166 F. App'x 669, 671 (4th Cir. 2006) ("Where, as here, a case is not absolutely groundless, an award of attorney's fees is not compelled.").

IV. <u>CONCLUSION</u>

With the exception of Plaintiff's claim for tortious interference with contract, which she asserts solely against Defendant Bowser in his individual capacity, Defendants have shown an entitlement to summary judgment, but not to an award of attorneys' fees.

**IT IS THEREFORE RECOMMENDED** that the Motion for Summary Judgment of Defendant Bowser (in his individual capacity) (Docket Entry 76) be granted in part and denied in part in that the Court should enter judgment as a matter of law in favor of Defendant Bowser on all of Plaintiff's claims except for Plaintiff's claim for tortious interference with contract, but should decline to award attorneys' fees under 42 U.S.C. § 1988.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (as to Defendants Bowser, in his official capacity as a Durham County Board of County Commissioners Board Member, and Durham County Board of County Commissioners) (Docket Entry 74) and the Motion for Summary Judgment (by the DSS Board and Defendants Bowser, Holt and Perry, in their official capacities) (Docket Entry 82) be granted in part and denied in part in that the Court should enter judgment as a matter of law in favor of the Durham County

-43-

Board of County Commissioners, the DSS Board, and Defendants Bowser, Holt, and Perry, in their official capacities, as to all of Plaintiff's claims, but should decline to award attorneys' fees under 42 U.S.C. § 1988.

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss filed by the Durham County Board of County Commissioners and Defendant Bowser in his official capacity (Docket Entry 22), the Motion to Dismiss filed by Defendants Bowser, Holt, and Perry in their official capacities and the Durham County DSS Board (Docket Entry 24), and the Motion to Dismiss of Defendant Bowser in his individual capacity (Docket Entry 26) be denied as moot.

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

August 22, 2013